Entered on Docket
December 02, 2005
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: December 01, 2005

DO NOT PUBLISH



_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 05-40472
                                         Adv. No. 05-4227
PATRICIA BERKOWITZ,

                Debtor.   /

NANCY FOSTER,

                Plaintiff,
vs.

PATRICIA BERKOWITZ,

                Defendant.  /

## DECISION

By this adversary proceeding, plaintiff Nancy Foster ("Foster") seeks a judgment denying the discharge of Patricia Berkowitz, the above debtor ("Berkowitz"), pursuant to Bankruptcy Code § 727(a)(2)[1]

---

[1]Bankruptcy Code § 727(a)(2)(A) provides: The court shall
(continued...)

Decision

(fraudulent prepetition transfer), (a)(3)[2] (concealment or destruction of recorded information), and (a)(4)[3] (false oath in bankruptcy case). The court will enter judgment in favor of Berkowitz.

Berkowitz is an attorney, and filed this chapter 7 bankruptcy case on February 3, 2005. Foster is a judgment creditor of Berkowitz, and holds a prepetition malpractice judgment against

---

[1](...continued)
grant the debtor a discharge, unless—
. . .
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—
(A) property of the debtor, within one year before the date of the filing of the petition.

[2]Bankruptcy Code § 727(a)(3): The court shall grant the debtor a discharge, unless—
. . .
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

[3]Bankruptcy Code § 727(a)(4) provides: The court shall grant the debtor a discharge, unless—
. . .
(4) the debtor knowingly and fraudulently, in or in connection with the case —(A) made a false oath or account.

Decision                                   2

Berkowitz in the sum of $344,541. Foster contends that Berkowitz should not receive a discharge, alleging that: (1) Berkowitz fraudulently concealed her ownership of real property in Haiti by intentionally omitting same from her bankruptcy schedules, (2) Berkowitz fraudulently conveyed certain real property situated in Sea Ranch, California, (3) Berkowitz falsified her bankruptcy schedules by intentionally understating the value of her interest in a residence she owned, and (4) Berkowitz's prepetition conduct shows that she engaged in a fraudulent scheme to denude herself of her assets at Foster's expense.

A. Property in Haiti

Berkowitz's parents jointly owned two parcels of real property in Haiti on which are situated several houses (the "Haiti Properties"). Berkowitz's mother died in 1972. Berkowitz's father died intestate in 1998, leaving behind Berkowitz, Berkowitz's sister Irene Kellogg, and several children born out of wedlock.

Berkowitz did not list any interest in the Haiti Properties in her bankruptcy schedules, as originally filed; this omission is the centerpiece of Foster's allegation that Berkowitz fraudulently concealed an ownership interest in the Haiti Properties.

At the meeting of creditors held March 16, 2005, Paul Mansdorf, trustee in bankruptcy, asked Berkowitz whether she owned any property outside the United States. Berkowitz testified in response that she did not own the Haiti Properties, that they were still in the name of her parents, that she has no paperwork regarding them, and that she cannot sell them. She admitted that she had received

Decision 3

some rent money from the Haiti Properties, but had used these monies for upkeep.

Thereafter, on April 15, 2005, Berkowitz amended her Schedules to disclose as follows:

> Debtor's mother and father died intestate in 1972 and 1998, respectively, leaving two parcels of real property in Haiti. Debtor has resided in the United States since 1965. She has seen no documents regarding ownership of either property. Debtor believes that one of the properties, located in Petionville, Haiti, was in the name of her father, Roger Aubry, and that the other property, located on Bourbon in Port-au-Prince, was in the name of her mother, Armande Aubry. Debtor has no idea of the value of the subject properties.

The weight of the evidence supports a finding that Berkowitz initial omission of the Haiti Properties from her schedules was not fraudulent.

At trial, Berkowitz waived her attorney-client privilege as to Martha Simon, Berkowitz's bankruptcy counsel who represented her in connection with the filing of her bankruptcy case and preparation of her bankruptcy schedules. Simon testified that before she prepared Berkowitz's bankruptcy schedules, Berkowitz had told her about the Haiti Properties. Simon further testified that she had advised Berkowitz that she need not include them in her schedules because the identity of the owner(s) under Haitian law was not clear, because Berkowitz had no paperwork or other evidence of title, and because Berkowitz lacked the ability as a practical matter to sell the Haiti Properties.[4]

---

[4] Berkowitz testified that to the best of her knowledge, (continued...)

Decision 4

Good faith reliance on the advice of counsel negates the fraudulent intent required to deny a debtor's discharge. See In re Adeeb, 787 F.2d 1339, 1343 (9th Cir. 1986). Here, although Berkowitz would have been better advised had Simon told her to include a disclosure about the Haiti Properties in her schedules as initially filed, the court does not believe that Simon's advice, or Berkowitz's reliance on same, was not in good faith. Accordingly, the court holds that the omission was not fraudulent.

B. Sea Ranch Property

Paragraph 8 of Foster's complaint herein alleges that Berkowitz was "dealing with family members to remove property from defendant's name, without disclosing the full details of the transaction on the bankruptcy schedules." This vague allegation was apparently intended to refer to a prepetition transaction in which Berkowitz sold her undivided one-half interest in undeveloped real property in Sea Ranch, California for a purchase price of $90,000, consisting of $50,000 cash and a $40,000 promissory note secured by a second deed of trust.

Foster contends that this sale was a fraudulent conveyance. In support of this allegation, Foster presented evidence showing that: (a) Berkowitz's son, Ashley Berkowitz, was executive director of the buyer, Epicarts Foundation, (b) Ashley received a gift of $5,000 out of the cash portion of the sales proceeds, and (c) Epicarts was able

---

[4](...continued)
bankruptcy trustee Paul Mansdorf had not been able to sell, and had not attempted to sell the Haiti Properties.

Decision 5

to resell a fee interest in the property for $239,000 some seven months after it acquired Berkowitz's one-half interest.

The evidence failed to establish that this transfer was a fraudulent conveyance. Berkowitz disclosed the sale (although not the $5,000 gift) in her Statement of Financial Affairs. Berkowitz was able to effect the sale without payment of any broker's commission, and turned the $40,000 purchase money note over to the trustee.

It is true that the sale was for a price less than 50% of the price for which Epicarts subsequently sold the entire property. However, the court does not believe the difference is significant to the extent of establishing fraud. The court has no evidence showing that Berkowitz could have sold her undivided 50% interest on the open market for a greater net amount. Moreover, Berkowitz testified, without contradiction, that before the sale, she had sought the advice of a professional broker, who advised her that the value of the fee was between $155,000 and $159,000.

The court holds that Berkowitz is entitled to prevail as to this claim for relief.[5]

C. <u>Valuation of Personal Residence</u>

Foster contends that, in her schedules, Berkowitz intentionally undervalued her residence. This allegation is based on the fact that Berkowitz scheduled the residence as having a value of $620,000

---

[5] Given this finding, the court need not address the issue whether paragraph 8 of the complaint was sufficient to put the sale of the Sea Ranch property at issue.

Decision                           6

whereas in a prepetition loan application for a refinance, Berkowitz listed the value as $675,000, an amount approximately nine percent greater. Berkowitz testified that she based her valuation in the schedules on a market analysis she had obtained, and disclaimed knowledge of the valuation placed in the refinance application.

The court received no evidence of the actual value of the property as of the date of Berkowitz's bankruptcy petition, and the mere fact of the nine percent disparity between the two amounts does not ipso facto establish that Berkowitz's valuation in the schedules was fraudulent. See, generally, Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001). Moreover, no evidence was presented showing that the trustee or anyone else was mislead in any way by Berkowitz's valuation. In re Adair, 253 B.R. 85, 89-90 (9th Cir. BAP 2000).

The court therefore holds that Berkowitz is entitled to prevail as to this claim for relief.

D. Scheme to Defraud Creditors

Foster contends that Berkowitz engaged in a scheme to defraud her by transfering her assets to third parties after Foster had commenced the malpractice litigation against Berkowitz. In support, Foster relies on the Sea Ranch sale mentioned above, and the fact that over the year that followed the filing of the malpractice complaint, Berkowitz repaid various debts she owed to the IRS, the California Franchise Tax Board, and individual persons other than Foster.

The court has already discussed the Sea Ranch sale. As to the other repayments, the court holds that no fraud is established by

Decision 7

the fact that Berkowitz repaid valid debts she owed to creditors other than Foster, but did not pay Foster.

One additional transaction that Foster cites as evidence of the alleged fraudulent scheme is a transfer of $85,000 that Berkowitz made in March 2004, some four and one-half months after Foster filed her malpractice complaint. Berkowitz testified that she made this transfer to repay a series of loans made by a Haitian creditor named Pierre Charment, starting in 1997. Foster contends that because an action to collect all or some portion of any such loan would have been barred by the statute of limitations, the repayment was fraudulent.

The court disagrees. Neither the very limited facts regarding this transaction that the parties introduced into evidence, nor any law that Foster has cited, establish that the transaction was fraudulent.

E. Conclusion

For the foregoing reasons, the court will issue its judgment in favor of Berkowitz.

**END OF DECISION**

```
 1                          COURT SERVICE LIST

 2

 3  Howard R. Melamed, Esq.
    319 Lennon Lane
 4  Walnut Creek, CA 94598

 5  Martha J. Simon, Esq.
    155 Montgomery Street, Suite 1004
 6  San Francisco, CA 94104

 7
    Paul Mansdorf, Chapter 7 Trustee
 8  4071 San Pablo Dam Road, #433
    El Sobrante, CA 94803

 9
    Minnie Loo
10  Office of the U.S. Trustee
    1301 Clay Street, #690N
11  Oakland, CA 94612
```

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

Decision                                         9